IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ REY HERNÁNDEZ, *et al.*,

   Plaintiffs,

   v.

NATIONAL INSURANCE COMPANY, *et al.*,

   Defendants.

Civil No. 11-1525 (BJM)

**OPINION AND ORDER**

In June 2009, José Rey Hernández, a student at the University of Puerto Rico Bayamón Campus, was seriously injured while practicing Olympic wrestling under the supervision of the University's coach, Pedro Rojas. Invoking diversity jurisdiction, Hernández and his mother sued, among others,[1] an insurance company with a policy covering UPR-Bayamón. Docket No. 1. The insurer's successor, Puerto Rico Guaranty Association ("PRGA"), now moves for summary judgment. Docket No. 81 ("Def. Mem."). Plaintiffs opposed (Docket No. 91, "Pl. Mem.") and PRGA replied (Docket No. 96). The parties consented to try the case before a magistrate judge. Docket No. 76. PRGA's motion is **granted in part and denied in part.**

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury

---

[1] The claims against all other non-fictitious parties have been dismissed. Docket Nos. 69, 75.

could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

The factual record is summarized here under Local Rule 56.[2] PRGA filed a statement of uncontested facts. Docket No. 82 ("Def. St."). Plaintiffs opposed (Docket No. 92 at 4–11, "Pl. Opp.") and offered further facts (*Id.* at 11–17, "Pl. St."). PRGA opposed the additional facts. Docket No. 97 ("Def. Opp.").

As a threshold matter, I note PRGA occasionally relies on a report and recommendation addressing a different defendant's motion for summary judgment. Citing appellate waiver doctrine, they assert that the plaintiffs' choice not to object to it

---

[2] Local Rule 56 requires parties at summary judgment to supply and rebut brief numbered statements of fact, pinpoint-citing admissible record evidence. It "relieve[s] the district court of any responsibility to ferret through the record" in search of genuine factual disputes, *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from making the court do their homework for them. *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). Failing to properly oppose a statement of fact allows the court to deem it uncontested. *Id.*

"precludes any further review" of the facts recited in it. *See* Def. Mem. at 6–7. But this is not an appeal, and nothing is being "reviewed," so the waiver rule is irrelevant. Rather more importantly, the district court *did not* rule that any facts from that summary judgment record were established in the case under Fed. R. Civ. P. 56(g). *See* Docket No. 75. While there do not seem to be any material factual differences, I nonetheless stress that the summary judgment framework has been applied to this record in the usual manner, with no special deference to the record developed before.

### *Pedro Rojas's Background and Other Employment*

Pedro Rojas graduated from college in Cuba, with a degree in Physical Culture and a specialty in Olympic Wrestling. The International Federation of Wrestling has certified him as a trainer. Def. St., ¶ 1. Upon leaving Cuba, he worked with Mexico's Olympic team, Olympic Committee, and national teams. Def. St., ¶ 2. He moved to Puerto Rico in September 1994, and worked with Puerto Rico's Wrestling Foundation and the Municipality of San Juan. Def. St., ¶ 3. His work for the Municipality ended in 2000, and his work for the Wrestling Federation ended in 2004. Def. St., ¶ 4. Between 2004 and November 2009, Rojas worked for the Commonwealth's Departamento de Recreación y Deportes ("DRD"). Def. St., ¶ 6. He was therefore employed by DRD on the date of Hernández's accident. Def. St., ¶ 7.

### *Rojas's Contracts with UPR-Bayamón*

Beginning in 1995, Rojas also had a series of ten-month employment contracts with UPR-Bayamón as an Olympic Wrestling Coach. Def. St., ¶¶ 8, 10; Pl. St., ¶ 1. The contracts ran from August through May, and Rojas was paid lump sums twice a year. Def. St., ¶ 9. During June and July of 2009, he was not under any contract with UPR-Bayamón. Def. St., ¶ 11. His duties included recruiting athletes and deciding who made the university team. Pl. St., ¶ 2. UPR-Bayamón's team mainly competes in the Liga Atlética Intercolegial ("LAI"), the "Sparta Cup," and at least one other competition. Pl.

St., ¶ 5. It also participates in several additional informal competitions. Pl. St., ¶ 6. Rojas would decide which athletes participated in which competitions. Pl. St., ¶ 7.

Gerardo Batista was UPR-Bayamón's Athletic Director during 2009. Def. St., ¶ 20. He testified that he thought Rojas's contract did not allow practice with the team or team members during "off months," since Rojas was not under a contract during that time. Def. St., ¶ 21. Moreover, Batista testified that at start-of-year coaches' meetings in August, he "usually" tells coaches not to train students in June or July. Docket No. 97-2 at 3. Rojas was never paid to conduct training in June 2009. Def. St., ¶ 14.

*Hernández and the UPR-Bayamón Wrestling Team*

Hernández first met Rojas when he enrolled at UPR-Bayamón in 2007 and joined the Olympic Wrestling team. Pl. St., ¶ 3. He was one of three students, from a pool of about thirteen, who Rojas chose.[3] Pl. St., ¶ 7. University athletes receive a tuition waiver. Pl. St., ¶ 3. According to Hernández, Rojas told him athletes had to maintain a GPA of at least 2.0 and had to attend compulsory practices. Pl. St., ¶ 4. Hernández attended practices Monday through Thursday, between 6:00 p.m. and 9:00 p.m. Pl. St., ¶ 8. Rojas explained that he only required four-day-a-week workouts in-season from student-athletes slated for the LAI. Docket No. 97-1 at 4–5.

As Hernández recalled, Rojas's practices tended to follow a schedule. Between 6:00 and 7:00 p.m., Rojas would join with the students in a game of soccer to get them warmed up. Between 7:00 and 8:00 p.m., Rojas would train all of his students with equal attentiveness. Between 8:00 p.m. and 9:00 p.m., Rojas would focus his attention on his "elite" group of internationally-competitive athletes. Pl. St., ¶¶ 8–10.

---

[3] Citing pages 104–106 of Rojas's deposition, PRGA asserts that Hernández "*never* belonged to an Olympic wrestling team and *never* competed for the UPR-Bayamón" because he did not meet the team's requirements before the summer that his accident occurred. Def. St., ¶ 18 (emphasis added). Pages 104–105 of Rojas's deposition assert that Hernández "did participate in the team" for UPR-Bayamón, while page 106 appears nowhere in the record. The distinction seems to be one of form and not substance: whether or not he was ever formally competing for the University, there is nothing contradicting Hernández's testimony, discussed below, that he participated in the sport.

During Hernández's freshman year, he went to two competitions under Rojas's direction: the "Sparta Cup," and another competition at the Albergue Olímpico. Pl. St., ¶¶ 11, 15. After his first semester, however, Hernández's GPA was only 1.5, and he became ineligible for financial assistance. Pl. St., ¶ 12. Rojas encouraged Hernández to study harder and keep practicing. Pl. St., ¶ 13. Hernández attended another Albergue Olímpico competition during the fall of his second year. Pl. St., ¶ 14.[4]

According to Hernández, during the spring of his second year—the semester before his accident—he practiced once or twice a week with Rojas, despite not formally being a member of the wrestling team. Pl. St., ¶ 16. Rojas, on the other hand, recalled that Hernández was involved in a DRD program to teach the basic sport of wrestling to children in housing projects, and that the program conflicted with Rojas's wrestling practices. Docket No. 97-1 at 13. In May 2009, Hernández's second-year grades brought his GPA up to 2.27. He promptly told Rojas that he passed his classes and wanted to be ready to compete for the LAI. Pl. St., ¶¶ 17, 18.

***Rojas's Summer Practices and Hernández's Accident***

Rojas testified that he "never" *asked* any UPR-Bayamón athlete to train with him during summer months, but that he *offered* training during the summer to "whoever wants to arrive to train," whether or not those people were UPR-Bayamón students. Def. St., ¶¶ 12–13, 15. But to the contrary, Hernández testified that Rojas "demanded" he attend summer practices, or else he would not be able to compete in the 2009 LAI, as Hernández had largely missed practices during the school year. Pl. St., ¶¶ 19–23. In any event, at least a few UPR-Bayamón students attended Rojas's summer practices. Pl. St., ¶ 28.

Hernández attended a practice with Rojas at the DRD facility in Santurce on June 15, 2009. Def. St., ¶ 16. The Secretary of Sports and Recreation designated the third

---

[4] PRGA denies these statements, citing Rojas's above-mentioned testimony that Hernández was not eligible for collegiate competition during his first or second years. Def. Opp. ¶ 11. But the record does not suggest that the "Sparta Cup" or Albergue Olímpico tournaments were intercollegiate. There is therefore no conflict between their narratives.

Case 3:11-cv-01525-BJM   Document 98   Filed 05/09/13   Page 6 of 8

Hernández v. Nat'l Ins. Co., Civil No. 11-1525 (BJM)                                                                   6

floor of that facility as a center for combat sports.  Def. St., ¶ 17.  While Hernández was on the ground during practice, a wrestler in a nearby pair was thrown and landed on Hernández's neck; he heard a crack and lost the ability to feel or move his limbs.  Pl. St., ¶¶ 25–26.  Hernández recalled that the wrestler who fell on him had attended UPR's Humacao campus and that a UPR-Humacao coach named "Ito" was present.  Pl. St., ¶¶ 24, 27.  On the other hand, Rojas testified that he was certain there was no UPR-Humacao "group" present that day and didn't know anyone nicknamed "Ito."  Docket No. 97-1 at 6.  UPR-Bayamón had an insurance policy in effect on the date of the accident, for which PRGA is currently the insurer.  Def. St., ¶ 22.

### DISCUSSION

Following PRGA's lead, I consider two questions:  (1) whether UPR-Bayamón is responsible for fault or negligence under Article 1802, and (2) whether it is responsible under Article 1803 as Rojas's employer.

**I.     Fault or Negligence Under Article 1802**

PRGA first argues there is no evidence that UPR-Bayamón is directly liable to Hernández.  Def. Mem. at 6, 15–16.  Under Puerto Rico law, the elements of negligence are (1) an injury, (2) a breach of duty, and (3) proximate causation.  *Vásquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007).  The breach-of-duty element requires showing the existence of a duty (in general, "that one must act as would a prudent and reasonable person under the circumstances") and its breach.  *Id.*  Here, there is no evidence independently linking UPR-Bayamón to any of the alleged breaches, such as the choice and suitability of the site, or a failure to limit the number of practicing athletes.  *Cf.* Docket No. 1, ¶¶ 40-44.  Plaintiffs do not refute this point, and PRGA is entitled to summary judgment on this claim.

**II.    Employer Liability Under Article 1803**

PRGA further argues that UPR-Bayamón was not responsible for Rojas's negligence, if any, because he was not under any contract with the university at the time

of the accident. Def. Mem. at 17-18. Under Puerto Rico law, "tort liability for the actions of a third party arises only under certain exceptional circumstances." *CMI Capital Market Inv., LLC v. Mun'y of Bayamón*, 410 F. Supp. 2d 61, 75 (D.P.R. 2006) (citing *Pons Anca v. Engerbreston*, 160 D.P.R. 347 (2003)). In relevant part, the Civil Code provides that "[o]wners or directors of an establishment or enterprise are . . . liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." 31 L.P.R.A. § 5142. While a broad range of factors are relevant, "the most important criteria in the determination of an employee status, *vel non*, is the control the employer may have over the work performed . . . ." See *Lugo v. Matthew Bender & Co.*, 579 F. Supp. 638, 642 (D.P.R. 1984) (citing *Mariany v. Christy*, 73 P.R.R. 729, 743–44 (1952)). See also *Ocasio v. Hogar Geobel Inc.*, 693 F. Supp. 2d 167, 179 (D.P.R. 2008) (collecting cases). Liability may be imputed to an employer under Puerto Rico law where (1) the employee wished "to serve, benefit, or further his employer's business or interest," (2) the act was "reasonably related to the scope of the employment," and (3) the employee had "not been prompted by purely personal motives." *Borrego v. United States*, 790 F.2d 5, 7 (1st Cir. 1986) (quotation marks omitted).

Viewed in the light most favorable to the non-moving plaintiffs, the record permits a finding that Rojas was employed by UPR-Bayamón when Hernández suffered his accident. As plaintiffs correctly argue, the fact that Rojas formally entered a two-month period of uncompensated "off-contract" status does not prevent a jury from concluding he was acting as a UPR-Bayamón employee at the time of the accident. UPR-Bayamón paid Rojas to coach Olympic wrestling for ten months out of the year. *See* Docket Nos. 84-3, 84-4. Crediting Hernández's version of the facts over Rojas's, a jury may find that Rojas conditioned Hernández's participation in UPR-Bayamón's school-year team on getting enough summer practice. This would be quite consistent

with Rojas's essential job at UPR-Bayamón: coaching University students in the sport of Olympic wrestling.

Plaintiffs' analogy to *Lloréns v. Lozada*, 73 P.R.R. 260 (1952),[5] though somewhat strained, is nonetheless apt.  There, an employer argued it was not responsible when an employee parked his work truck dangerously on the side of the road one evening, causing an accident later on that night.  The employee had parked in that spot both to go home as well as to more easily resume work in the morning, but he disregarded an instruction to never park on the road overnight.  *Id.* at 264.  The court held that an employer cannot avoid liability for acts within the scope of employment simply because the employee had mixed personal motives in carrying out the particular act.  Likewise, the employer could not avoid liability simply because it had forbidden the employee's particular conduct.  In Rojas's case, neither the fact that Batista told coaches not to train students over the summer, nor that Rojas was also training international-level and non-student athletes, will categorically preclude UPR-Bayamón's employer liability under Article 1803.

In sum, there are triable questions of fact regarding Rojas's relationship with UPR-Bayamón at the time of Hernández's accident.  PRGA is therefore not entitled to summary judgment on plaintiffs' Article 1803 claim.

## CONCLUSION

For the foregoing reasons, PRGA's motion is **GRANTED IN PART.**  The Article 1802 claim against PRGA, as an insurer of UPR-Bayamón, is **DISMISSED.**  The motion for summary judgment on plaintiffs' Article 1803 claim is **DENIED.**

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 9th day of May, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge

---

[5] Though they mistakenly call the case *Collado*, they cite and describe the facts and holding of *Lloréns*.